STATE of Maine

v.

Peter C. KENNEDY.

Supreme Judicial Court of Maine.

Submitted on Briefs March 17, 1995.

Decided April 28, 1995.

Jeffrey Silverstein, Asst. Dist. Atty., Bangor, for the State.

J. Hilary Billings, Bangor, for defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

RUDMAN, Justice.

Peter Kennedy appeals from a judgment entered in the Superior Court (Penobscot County, *Mead, J.*) following a jury verdict finding him guilty of the charge of operating with excessive blood-alcohol level or under the influence, 29 M.R.S.A. § 1312–B (Pamph. 1994). Kennedy contends that the trial court erred by admitting in evidence an incomplete blood-alcohol test, and erred by not providing specific instructions as to how to evaluate expert testimony. We conclude that the trial court neither abused its discretion by its admission of the incomplete blood-alcohol test, nor issued erroneous instructions, and therefore, affirm the judgment.

I.

When Kennedy was stopped at a roadblock in Bangor in September 1992, Bangor Police Office Brian Veysey smelled alcohol and observed Kennedy's eyes were red and glassy. Veysey asked Kennedy to get out of his car and noticed that Kennedy was unsteady on his feet. This prompted Veysey to administer several field sobriety tests, all of which Kennedy performed poorly. Kennedy was then transported to the Bangor Police Station where Veysey administered a breath alcohol test using a Intoxilyzer 5000 machine. The first breath sample returned a reading of .194%.[1] The machine then registered results on the second, third and fourth samples but noted the breath samples were "insufficient." On the fourth try, the machine directed that another test be administered. Officer Veysey chose not to administer another test.

Title 29 M.R.S.A. § 1312(6) (Pamph.1994) provides in pertinent part:

[A] law enforcement officer may test the breath of any person whom there is probable cause to believe has operated or attempted to operate a motor vehicle while under the influence of intoxicating liquor

1. 29 M.R.S.A. § 1311–A(1A) (Pamph.1994) defines "operating or attempting to operate a motor vehicle with an excessive blood-alcohol level" to mean "operating or attempting to operate a motor vehicle while having 0.08% or more by weight of alcohol in the blood."

or drugs by use of a self-contained, breath-alcohol testing apparatus to determine the blood-alcohol level.... The procedures for the operation and testing of self-contained breath-alcohol testing apparatuses shall be as provided by regulation promulgated by the Department of Human Services *The result of any such test shall be accepted as prima facie evidence of the blood-alcohol level in any court.... Failure to comply with any provisions of this subsection or with any regulations promulgated in this subsection shall not, by itself, result in the exclusion of evidence of blood-alcohol level or drug concentration, unless the evidence is determined to be not sufficiently reliable.*

(Emphases added). Officer Veysey testified that the machine he used to test Kennedy's breath was a machine certified by DHS. The applicable DHS regulations provide in part that a complete blood-alcohol test must consist of two separate breath samples, the results of which are within .02% of each other, and further provide that if the first two samples do not fall within this range, the person administering the test should take more samples until two tests comply. If four separate samples are taken, with no two falling within that range, a different test should be administered.[2]

■ Compliance with administration requirements is not an absolute prerequisite to admission. *See State v. McConvey*, 459 A.2d 562, 568 (Me.1983) (finding "a clear expression of a legislative policy which has existed since the enactment of the implied consent statute, that is, that blood-alcohol test results are admissible unless unreliable"). The question in the instant case, then, is whether the test results were sufficiently reliable to be admitted.

■ James Young, a forensic chemist, testified that the result was reliable with qualifi-

cations. The trial court thus had competent evidence before it from which it could determine that the first result was sufficiently reliable to be relevant, and that the expert's testimony would assist the trier of fact in evaluating it. *See State v. Williams*, 388 A.2d 500, 504 (Me.1978). On this record, the trial court did not err or abuse its discretion in the admission of the evidence. *See* M.R.Evid. 402 (relevant evidence admissible except as limited by constitution, statute, or rules), M.R.Evid. 403 (relevant evidence may be excluded if probative value outweighed by danger of unfair prejudice, confusion of the issues, misleading the jury, or by undue delay, waste of time, or needless presentation of cumulative evidence), and M.R.Evid. 702 (allowing testimony by a qualified expert pertaining to scientific evidence if it will assist the trier of fact).

## II.

■ Although Kennedy did not object at trial, he now argues that the trial court should have provided instructions specifically pertaining to the evaluation of expert testimony. We review only for obvious error affecting substantial rights. *State v. Ilsley*, 604 A.2d 17, 18 (Me.1992). Kennedy suggests that the court erred by failing to comment that the rules of evidence generally do not allow witnesses to testify to conclusions or opinions and that an exception is made to this rule for experts. Such an instruction was not necessary in this case.

The entry is:

Judgment affirmed.

All concurring.

---

2. The procedures pursuant to the "Rules Governing Self–Contained Breath Alcohol Testing Equipment" provide in pertinent part:
  1. ...
  2. For each person tested, a complete blood-alcohol test must consist of 2 separate breath samples which result in determinations of blood alcohol concentration which agree within ± 0.02% w/v.
  3. If the first 2 breath sample results on the subject do not agree within ± 0.02% w/v,

subsequent samples must be taken until 2 tests fall within the prescribed limits. If after 4 separate breath sample results are taken, no 2 breath sample results agree within the prescribed limits, the testing sequence shall be void and an alternative breath procedure shall be required.
Me. Dep't of Hum. Serv. Reg. 269 (Nov. 15, 1978).